Slip Op. 14-54

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LDA INCORPORADO,**<br><br>       **Plaintiff,**<br><br>   v.<br><br>**UNITED STATES,**<br><br>       **Defendant.** | Before: Claire R. Kelly, Judge<br>Court No. 12-00349 |

## OPINION AND ORDER

[Denying Customs' motion to dismiss for lack of jurisdiction.]

Dated: 5/13/2014

<u>Ronald M. Wisla</u>, <u>Lizbeth R. Levinson</u>, Kutak Rock LLP of Washington, DC, for Plaintiff.

<u>Saul Davis</u>, Senior Trial Counsel, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, of Washington DC for Defendant. With him on the brief were <u>Stuart F. Delery</u>, Assistant Attorney General, <u>Amy M. Rubin</u>, Acting Assistant Director, <u>Beverly A. Farrell</u>, Trial Attorney. Of counsel on the brief was <u>Beth C. Brotman</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of Washington, DC.

    **Kelly, Judge:** Plaintiff LDA Incorporado ("Plaintiff") challenges Defendant United States Customs and Border Protection's ("Defendant" or "Customs") denial of its protest regarding Plaintiff's entry of merchandise. Plaintiff asserts Customs erroneously determined that Plaintiff's merchandise was not excluded from the scope of the antidumping and countervailing duty orders on <u>Circular Welded Carbon Quality Steel Pipe from the People's Republic of China</u>, 73 Fed. Reg. 42,547 (Dep't Commerce July 22,

2008) (notice of antidumping duty order) ("ADD Order") and Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 73 Fed. Reg. 42,545 (Dep't Commerce July 22, 2008) (notice of amended final affirmative countervailing duty determination and notice of countervailing duty order) ("CVD Order") (collectively the "Orders"). Plaintiff claims Customs' mistake in not determining the proper amount of duties chargeable to Plaintiff's entry is a protestable decision under Section 514(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514(a)(2) (2006),[1] and the denial of its protest gives rise to the court's jurisdiction under 28 U.S.C. § 1581(a) (2006).[2]

Defendant moves to dismiss Plaintiff's complaint for lack of jurisdiction pursuant to USCIT Rule 12(b)(1), claiming Customs' determination that Plaintiff's merchandise was within the scope of the Orders was not a protestable decision under 19 U.S.C. § 1514(a)(2). Instead, Defendant argues Plaintiff was required to seek a timely scope ruling from the Department of Commerce ("Commerce"), and that its failure to do so deprives this Court of jurisdiction. The court concludes that Customs' determination that Plaintiff's merchandise was not excluded from the scope of the Orders is a protestable decision of the type specified in § 1514(a)(2). Therefore, the court denies Defendant's motion to dismiss.

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition, and all applicable supplements.
[2] Further citations to Title 28 of the U.S. Code are made to the 2006 edition, and all applicable supplements.

## Background

On July 22, 2010, Plaintiff imported a single entry of merchandise, which it described as electrical rigid metal conduit steel, a type of rigid steel conduit product. Plaintiff classified the merchandise under Harmonized Tariff Schedule of the United States ("HTSUS") 7306.30.50.25,[3] as duty free, without reference to the Orders.

Plaintiff believed the merchandise was specifically excluded from the scope of the Orders as "finished electrical conduit." See Pl.'s Response 4, Dec. 24, 2013, ECF No. 17. Plaintiff's merchandise is both internally and externally coated with zinc, a conductive material, i.e., galvanized, but is not internally coated with a non-conducting liner (such as rubber or plastic). Therefore, the interior of Plaintiff's electrical conduits would conduct electricity.[4] The Orders define the scope of the subject merchandise as

> welded carbon quality steel pipes and tubes, . . . regardless of wall thickness, surface finish (e.g., black, galvanized, or painted), end finish (e.g., plain end, beveled end, grooved, threaded, or threaded and coupled), or industry specification (e.g., ASTM, proprietary, or other), generally known as standard pipe and structural pipe (they may also be referred to as circular, structural, or mechanical tubing). . . Standard pipe is made primarily to American Society for Testing and Materials (ASTM) specifications, but can be made to other specifications. Standard pipe is made primarily to ASTM specifications A-53, A-135, and A-795. Structural pipe is made primarily to ASTM specifications A-252 and A-500. Standard and structural

---

[3] HTSUS 7306.30.50.25 covers "other tubes, pipes and hollow profiles (for example, open seamed or welded, riveted or similarly closed), of iron or steel, . . . of iron or non-alloy steel, . . . galvanized, imported with coupling."

[4] Plaintiff's merchandise is compliant with Underwriters Laboratories Inc. ("UL") standard UL-6 and American National Standard Institute ("ANSI") standard ANSI C80.1-2005 for "electrical rigid metal conduit steel," and was labeled with the UL-6 mark at the time of entry. Pl.'s Response 5–6. The UL-6 and ANSI C80.1-2005 standards do not require an internal coating with a non-conducting liner (such as rubber or plastic) in order for rigid electrical conduit to be considered "finished."

pipe may also be produced to proprietary specifications rather than to industry specifications.[5]

ADD Order at 42,547; CVD Order at 42,545. However, "finished electrical conduit" is explicitly excluded from the scope. Specifically the Orders state:

> The scope of this investigation does not include: (a) pipe suitable for use in boilers, superheaters, heat exchangers, condensers, refining furnaces and feedwater heaters, whether or not cold drawn; (b) mechanical tubing, whether or not cold-drawn; (c) finished electrical conduit; (d) finished scaffolding; (e) tube and pipe hollows for redrawing; (f) oil country tubular goods produced to API specifications; and (g) line pipe produced to only API specifications.

ADD Order at 42,548; CVD Order at 42,546.

At the time of entry, Customs performed laboratory inspections on the merchandise and subsequently sent Plaintiff a Notice of Action on January 10, 2011, stating that the merchandise was subject to the Orders without re-classifying the goods or providing any further explanation.[6] See Pl.'s Response Ex. 1 at 19, Dec. 24, 2013,

---

[5] The Orders indicate that "the pipe products that are the subject of this investigation are currently classifiable in HTSUS statistical reporting numbers 7306.30.10.00, 7306.30.50.25, 7306.30.50.32, 7306.30.50.40, 7306.30.50.55, 7306.30.50.85, 7306.30.50.90, 7306.50.10.00, 7306.50.50.50, 7306.50.50.70, 7306.19.10.10, 7306.19.10.50, 7306.19.51.10, and 7306.19.51.50. However, the product description, and not the [HTSUS] . . . classification, is dispositive of whether merchandise imported into the United States falls within the scope of the order." ADD Order at 42,548; CVD Order at 42,546. Notably excluded is HTSUS 7306.30.50.28, which covers "other tubes, pipes and hollow profiles (for example, open seamed or welded, riveted or similarly closed), of iron or steel, . . . of iron or non-alloy steel, . . . galvanized, internally coated or lined with a non-electrically insulating material, suitable for use as electrical conduit." ADD Order at 42,548; CVD Order at 42,546. Plaintiff asserts that the only reason its conduit is classifiable under HTSUS 7306.30.50.25 and not HTSUS 7306.30.50.28 is because its conduit has a coupling attached. Pl.'s Response 18.

[6] The Notice of Action instructed Plaintiff:
> Be advised that you must exercise reasonable care when you are reviewing and classifying products which are subject to antidumping duties. Imported

(footnote continued)

ECF No. 17-1. Plaintiff claims that it attempted to convince Customs that its merchandise was "finished electrical conduit" to no avail. Pl.'s Response 7–9. In April of 2011, Customs forwarded the matter to Customs Headquarters, which advised Plaintiff to obtain a scope ruling from Commerce. On January 27, 2012, Customs liquidated Plaintiff's entry. Id. at 10. On February 22, 2012, Plaintiff filed a scope inquiry with Commerce. Id.

On April 26, 2012, Plaintiff filed a timely protest with Customs, which Customs denied on May 12, 2012. See Pl.'s Response Ex. 6, Dec. 24, 2013, ECF No. 17-6. On July 2, 2012, Commerce issued its scope ruling, finding that Plaintiff's merchandise was finished electrical conduit and therefore excluded from the scope of the Orders.

## Discussion

**Standard of Review**

The party seeking the court's jurisdiction has the burden of establishing that jurisdiction exists. See Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006). "If a Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations—that is, the movant presents a 'facial' attack on the pleading—then those allegations are taken as true and

---

merchandise is subject to antidumping duties under case A570-910-000/85.55% and countervailing duties under case C-570-911-000/37.28%. Please forward duties due and a certificate of reimbursement statement within 20 days after the date of this notice. Failure to comply will result in the assessment of antidumping duties at double the applicable rate at the time of entry liquidation.

Pl.'s Response Ex. 1 at 19.

construed in a light most favorable to the complainant." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). Where

> the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the . . . court.

Cedars-Sinai Med. Ctr., 11 F.3d at 1583–84 (internal citations omitted). Moreover, "[w]here, as here, claims depend upon a waiver of sovereign immunity, a jurisdictional statute is to be strictly construed." Celta Agencies, Inc. v. United States, 865 F.Supp.2d 1348, 1352 (CIT 2012) (citing United States v. Williams, 514 U.S. 527, 531 (1995)).

**Analysis**

Under 28 U.S.C. § 1581(a), the court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." Section 1515(a) instructs Customs to timely review and decide any protest filed in accordance with 19 U.S.C. § 1514, subsection (a) which lists the Customs decisions that may be protested. Section 1514(a) provides that for

> any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—
> **(1)** the appraised value of merchandise;
> **(2)** the classification and rate and amount of duties chargeable;
> **(3)** all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
> **(4)** the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision

> of the customs laws, except a determination appealable under section 1337 of this title;
> **(5)** the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 or section 1504 of this title;
> **(6)** the refusal to pay a claim for drawback; or
> **(7)** the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;
>
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

19 U.S.C. § 1514(a). Thus, a proper protest under § 1514(a) that is then denied by Customs will form the basis of the court's jurisdiction under 28 U.S.C. § 1581(a).

Section 1514(b) excludes determinations under subtitle IV, 19 U.S.C. §§ 1671–1677n, covering countervailing and antidumping duties, from those which may be protested under § 1514(a). Section 1514(b), "[f]inality of determinations," provides in relevant part:

> With respect to determinations made under section [1330] of this title or subtitle IV of this chapter which are reviewable under section 1516a of this title, determinations of the Customs Service are final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action contesting a determination listed in section 1516a of this title is commenced in the United States Court of International Trade . . . .

19 U.S.C. § 1514(b). Section 1516a, cited in the statute, is entitled "[j]udicial review in countervailing duty and antidumping duty proceedings." It contains a list of "[r]eviewable determinations" including:

> (vi) A determination by the administering authority [Commerce] as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order.

19 U.S.C. § 1516a(a)(2)(B)(vi). Thus, as previously held by this court, and affirmed by the Court of Appeals, where Commerce determines that a particular type of merchandise is "within the class or kind of merchandise described in an existing finding of dumping" that determination is not reviewable through the protest mechanism.[7] See, e.g., Sandvik v. United States, 21 CIT 140, 141 (1997), aff'd 164 F.3d 596, 598 (Fed. Cir. 1998); Fujitsu Ten Corp. of Am v. United States, 21 CIT 104, 105 (1997), aff'd sub nom. Sandvik v. United States, 164 F.3d 596, 598 (Fed. Cir. 1998).

      In Sandvik, the Court of Appeals reviewed the consolidated Court of International Trade cases Sandvik and Fujitsu, affirming the lower court's dismissals for lack of jurisdiction. In each case, the importer protested Customs' assessment of antidumping duties and claimed jurisdiction pursuant to 28 U.S.C. §1581(a). In each case, the Court of International Trade held Customs' assessment was not a protestable decision. The court held that if the importers wanted to challenge the assessment of

---

[7] Section 1516a references other Commerce determinations which are reviewable, such as:
> (i) Final affirmative determinations by the administering authority and by the Commission under section 1671d or 1673d of this title, including any negative part of such a determination (other than a part referred to in clause (ii)).
> . . .
>
> (iii) A final determination, other than a determination reviewable under paragraph (1), by the administering authority or the Commission under section 1675 of this title. . . .

19 U.S.C. § 1516a(a)(2)(B)(i), (iii).

antidumping duties they needed to pursue a determination by Commerce that their goods were not within the scope of the orders in question. Sandvik, 21 CIT at 145; Fujitsu, 21 CIT at 107–08.

In both cases the scope of the order was at issue. Sandvik, 21 CIT at 142; Fujitsu, 21 CIT at 106. The order at issue in Sandvik covered "[S]tainless steel hollow products including pipes, tubes, hollow bars and blanks therefor, of circular cross section, containing over 11.5 percent chromium by weight, as provided for under the Harmonized System (HS) of Customs nomenclature item numbers 7304.41.00.00 and 7304.49.00.00." Sandvik, 21 CIT at 141. The plaintiffs' merchandise consisted of seamless composite tubes. As the Court of International Trade explained:

> A composite tube is a carbon steel "inner" tube that has an outer covering or coating made of stainless steel. The carbon steel "inner" portion of the tube constitutes 75 percent of the weight of the entire tube. The stainless steel "outer" portion constitutes the other 25 percent of the tube's weight. Chromium constitutes 18 to 19 percent of the weight of the stainless steel portion of a composite tube. Thus the stainless steel portion of a composite tube accounts for only 25 percent of the weight of the entire tube, and the entire tube contains less than 5 percent chromium by weight.

Sandvik, 21 CIT at 141. Prior to the entries at issue, Customs had not assessed antidumping duties on the plaintiff's merchandise. Customs then decided "without any apparent direction from Commerce" that the merchandise fell within the scope of the order. Sandvik, 21 CIT at 142. The Court of International Trade found that the importer should have obtained a scope ruling from Commerce to determine if its goods were covered by the order.

In Fujitsu, the plaintiff imported parts of automobile radios known as front ends or ETV front ends. Upon entry, Customs required the deposit of antidumping duties pursuant to an order whose scope covered:

> Tuners of the type used in consumer electronic products consist primarily of television receiver tuners and tuners used in radio receivers such as household radios, stereo and high fidelity radio systems, and automobile radios. They are virtually all in modular form, aligned, and ready for simple assembly into the consumer electronic product for which they were designed.

Fujitsu, 21 CIT at 105. As the Court of International Trade explained:

> Fujitsu requested a scope ruling from Commerce that its front ends and ETV front ends were not tuners within the meaning of the antidumping order. Both before and after filing its request for a scope ruling, Fujitsu filed protests with Customs relating to the assessment of antidumping duties on the subject merchandise.

Fujitsu, 21 CIT at 105. Commerce ultimately found that the merchandise was outside of the scope of the order without the need for a formal inquiry. Fujitsu, 21 CIT at 105.

The Court of International Trade found in both Sandvik and Fujitsu that the importer could not protest Customs' liquidation and bring suit via § 1581(a). The Court of Appeals affirmed stating:

> What section 1514(b) means for these cases is that Customs determinations relating to antidumping duties are final unless a civil action contesting a determination listed in section 1516a is commenced in the Court of International Trade. Section 1516a provides for review of determinations by the administering agency (Commerce) or by the International Trade Commission; it does not provide for review of determinations by Customs. Section 1514(b) therefore makes "final and conclusive" Customs' denial of protests to Customs' application of antidumping duty orders on the imports of Sandvik and Fujitsu because those companies failed timely to seek scope determinations from Commerce and then to seek judicial review under section 1516a(a)(2)(B)(vi) in the Court of International Trade, of any adverse decision by Commerce.

Sandvik, 164 F.3d at 601. Thus, the Court of Appeals reasoned that §§ 1514(b) and 1516a(a)(2)(B)(vi) barred review of denied protests regarding the calculation of duties and of protests where a class or kind determination should have been made by Commerce in a scope ruling. Sandvik, 164 F.3d at 601–02. Reading Sandvik alone, one might conclude that § 1514(b) made § 1516a the exclusive route for judicial review at the Court of International Trade any time there was a decision by either Customs or Commerce with respect to whether goods were within the scope of an antidumping or countervailing duty order. In other words, one might read Sandvik as holding that any time an importer believed that Customs had erred in applying an antidumping or countervailing duty order to its merchandise, its only recourse was to seek a scope ruling from Commerce.

However, the Court of Appeals in Xerox clarified that Sandvik's reasoning only applies to cases where the scope of the order is in question, not where Customs has mistakenly applied that order. Xerox Corp. v. United States, 289 F.3d 792 (Fed. Cir. 2002). In Xerox, the plaintiff imported paper feed belts for electrostatic photocopiers. Customs liquated entries of plaintiff's goods, assessing antidumping duties based on Customs' determination that the belts were within the scope of an antidumping duty order for power transmission belts containing textile fibers. The importer protested liquidation claiming that the goods were clearly outside the scope of the order and that Customs had made a mistake of fact by including them. Customs denied the protest and the importer brought suit at the Court of International Trade without filing a scope inquiry with Commerce. Xerox Corp. v. United States, 24 CIT 1145, 1145 (2000), rev'd 289 F.3d 792 (2002). The lower court found plaintiff was challenging an antidumping determination, and thus, citing Sandvik, determined it lacked jurisdiction. Xerox, 24 CIT at 1147. The

Court of Appeals reversed and found that the importer's goods "[were] facially outside the scope of the antidumping duty order," because they "were not used for power transmission and were not constructed with the materials listed in the order . . . ." Xerox, 289 F.3d at 795.  The court found Sandvik was inapposite:

> In this case, however, the scope of the order is not in question, and therefore the reasoning in Sandvik does not apply. Xerox asserts that the belts at issue are facially outside the scope of the antidumping duty order and that it did not request a section 1516a(a)(2)(B)(vi) scope determination by Commerce because such an inquiry was unnecessary. We agree. The belts at issue were not used for power transmission and were not constructed with the materials listed in the order, and are clearly outside the order.
> Xerox persuasively argues that correcting such a ministerial, factual error of Customs is not the province of Commerce. Instead an importer may file a protest with Customs. In cases such as this, where the scope of the antidumping duty order is unambiguous and undisputed, and the goods clearly do not fall within the scope of the order, misapplication of the order by Customs is properly the subject of a protest under 19 U.S.C. § 1514(a)(2). The Court of International Trade may review the denial of such protests under 28 U.S.C. § 1581(a). And pursuant to 19 U.S.C. § 1515(a), "any duties ... found to have been assessed or collected in excess shall be remitted or refunded." This appeal from Customs' denial is reviewable by the court.

Xerox, 289 F.3d at 795.  Thus, under Xerox where the importer claims that Customs erred as a matter of fact by including its goods within the scope of the order, Customs' determination is the proper subject for a protest.  Xerox, 289 F.3d at 795.

Xerox is perfectly consistent with the statutory language. As discussed above, § 1514(b) excludes from protestable decisions those antidumping and countervailing determinations that are properly reviewed via § 1516a, under the court's § 1581(c) jurisdiction.  Relevant to this case is § 1516a(a)(2)(B)(vi), which provides:

> A determination by the administering authority [Commerce] as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order.

19 U.S.C. § 1516a(a)(2)(B)(vi). Subsection (vi) covers scope rulings made by Commerce. Where the determination at issue is one made by Commerce pursuant to § 1516a(a)(2)(B)(vi), no protest is available. Where, as in Xerox, the determination is a factual application of the scope of an order by Customs, a protest is available. The decision required in Sandvik was one for Commerce, i.e., defining the class or kind of merchandise in the Order. The crux of the complaint in Xerox was that Customs made a mistake of fact when it found the goods at issue to be within the scope of the order.

The Sandvik/Xerox dichotomy between Commerce's decisions regarding the class or kind of merchandise and Customs' decisions applying Commerce's instructions also comports with the Court of Appeals' analytical framework established in Mitsubishi Electronics America, Inc. v. United States, 44 F.3d 973 (Fed. Cir. 1994). Mitsubishi instructs that the "1979 Act amended 19 U.S.C. § 1514(a) and (b) to exclude antidumping determinations from the list of matters that the parties may protest to Customs." Mitsubishi, 44 F.3d at 976. Accordingly, "Customs merely follows Commerce's instructions in assessing and collecting duties. Customs does not determine the 'rate and amount' of antidumping duties under 19 U.S.C. § 1514(a)(2)." Mitsubishi, 44 F.3d at 977.

Using the Mitsubishi framework, the relevant question here is whether the decision at issue was that of Customs or Commerce. In other words, one must ask whether Customs acted in a passive and ministerial manner or made an active decision. The Mitsubishi inquiry has been invoked time and again by the Court of Appeals. In Cemex, S.A. v. United States, 384 F.3d 1314 (Fed. Cir. 2004), domestic manufacturers of cement intervened in an antidumping duty case challenging Commerce's final results.

After a court decision, Commerce instructed Customs to liquidate and assess antidumping duty liability. Some entries were not liquidated pursuant to these instructions. Instead, Customs mistakenly deemed 140 entries liquidated at the rate originally claimed by the importer. Cemex, 384 F.3d at 1315. While the domestic manufacturers had no avenue to protest Customs' liquidation, the Court of International Trade found that Customs had made a decision that was a protestable event under § 1514(a) and, therefore, could not be challenged under § 1514(i). Cemex, 384 F.3d at 1319. The Court of Appeals, citing Mitsubishi, affirmed:

> While we agree that Customs' role in making *antidumping decisions, i.e.,* in calculating antidumping duties, is generally ministerial, Customs here made a decision regarding *liquidation*. Following an inquiry into the legal posture of the Second Review Entries, Customs chose to effect their liquidation by posting the Bulletin Notices. More than passive or ministerial, Customs' actions constitute a "decision" within the context of section 1514(a). Customs' admittedly erroneous decision to liquidate falls within the ambit of section 1514(a)(5), which shields such decisions from challenge, without regard for their legality.

Cemex, 384 F.3d at 1324 (footnotes omitted); see also Ugine and Alz Belgium v. United States, 452 F.3d 1289, 1296-96 (Fed. Cir. 2006) ("Xerox applies to challenges to actions by Customs in applying Commerce's instructions, not to challenges to the instructions themselves."); U.S. Shoe v. United States, 114 F.3d 1564, 1569 (Fed. Cir. 1997) ("[t]ypically, 'decisions' of Customs are substantive determinations involving the application of pertinent law and precedent to a set of facts, such as tariff classification and applicable rate of duty. Indeed, prior case law indicates that Customs must engage in some sort of decision-making process in order for there to be a protestable decision.").

The Xerox clarification of Sandvik is not only consistent with § 1514(b) and Mitsubishi, but it also makes sense. Certainly, as the court alluded to in Xerox, Congress

did not intend to allow Customs to shield its decision-making process in applying Commerce's liquidation instructions from judicial review by claiming the determination should have been made by Commerce. If Congress had so intended, Customs could act contrary to Commerce's instructions without consequence. Where Customs acts in a merely ministerial fashion it cannot, by definition, be acting contrary to Commerce's instructions. Where Customs makes decisions, on the other hand, it may indeed be acting contrary to the instructions of Commerce and where such conduct affects the rate of duty it is protestable under § 1514(a)(2), as Xerox held.[8]

Here, as in Xerox, the importer claims that there was a mistake made by Customs. Like the importer in Xerox, and unlike the plaintiffs in Sandvik and Fujitsu, Plaintiff claims that the scope of the Orders specifically excluded its goods:

---

[8] The court notes that in Xerox, the court held that where "the goods clearly do not fall within the scope of the order, misapplication of the order by Customs is [a] properly" protestable decision under 19 U.S.C. § 1514(a)(2), the denial of which is reviewable by the court under 28 U.S.C. § 1581(a). One might question how to determine whether the goods clearly fall within the scope of the order. It is not clear from either the lower court or the Court of Appeals decision that Customs knew for certain that the Xerox plaintiff's goods were clearly outside the scope of the order. The plaintiff in Xerox simply alleged as a matter of fact that the goods were a different product than those covered by the order. Complaint ¶¶14-16, Xerox Corporation v. United States, 24 CIT 1145, ECF No. 2 (2000). Plaintiff alleged that the order at issue covered "certain industrial belts for power transmission . . . containing textile fibers (including glass fiber) or steel wire, cord or strand . . . ." Id. at ¶14 and that "the imported belts . . . are not used in power transmission, and do not contain textile (including glass fiber) or steel wire, cord or strand . . . ." Id. at ¶16. Plaintiff did not allege that the fact that these goods were not covered by the order was clear on the documents submitted to Customs, only that the goods were outside the order and that Customs made the erroneous decision to include them within the scope of the order. Surely, jurisdiction cannot depend upon the merits of the dispute, i.e., whether the goods are ultimately determined by this court to be outside the scope of the order. Xerox must therefore be read to reinforce the principle established in Mitsubishi, that what matters is whether Customs makes the decision to include the goods within the order or merely performs a ministerial role at the direction of Commerce.

> The scope of this investigation does not include: (a) pipe suitable for use in boilers, superheaters, heat exchangers, condensers, refining furnaces and feedwater heaters, whether or not cold drawn; (b) mechanical tubing, whether or not cold-drawn; (c) finished electrical conduit; (d) finished scaffolding; (e) tube and pipe hollows for redrawing; (f) oil country tubular goods produced to API specifications; and (g) line pipe produced to only API specifications.

ADD Order at 42,547; CVD Order at 42,545. Thus, Plaintiff here, like the plaintiff in Xerox, claims no scope ruling from Commerce was needed.[9] As was the case in Xerox, Customs did not act in a merely ministerial capacity at the direction of Commerce. It made a decision which, Plaintiff claims, clearly contravened Commerce's instructions in the Orders.

As was the case in Xerox, Plaintiff's claim is that Customs did not act at the direction of Commerce. Plaintiff claims "[Customs] made a factual error and misapplied the express scope language of the [Orders]." Pl.'s Response 11. As such, Customs made a protestable decision. To find otherwise would relieve Customs from ever applying a specific exclusion in an order unless Commerce had already issued a scope ruling. It would also require an importer to seek a scope ruling even if Customs made a clear error applying an order. Such a finding would transform Customs' purportedly ministerial role in reading and applying the terms of the scope into a discretionary one immune from judicial review.

---

[9] Plaintiff claims that it did not need a scope ruling from Commerce because its goods fell into a clear exclusion provided by the Orders. That Commerce ultimately issued a ruling that applied to entries "that remain unliquidated," Def.'s Mot. Dismiss 9, does not affect Plaintiff's claim that Customs made a factual mistake as to the rate or amount of duties chargeable to Plaintiff's prior entries. Furthermore, merely because Plaintiff eventually filed a scope ruling request after being instructed to do so by Customs, should not work a penalty on Plaintiff here if Plaintiff is correct that the Orders specifically excluded its merchandise.

Finally, Defendant's argument that jurisdiction is lacking because Plaintiff has not exhausted its remedies is inapposite. Were the Plaintiff here challenging the scope of the Orders and seeking jurisdiction pursuant to § 1516a, such an objection might have merit. If an importer believes the scope of an order is unclear it can seek a scope ruling. A scope ruling, made pursuant to 19 U.S.C. § 1673 and 19 C.F.R. § 351.225, "clarifies the scope of an order . . . with respect to particular imports." 19 C.F.R. § 351.225. If the Plaintiff's claim had been that the scope of the Orders were unclear it could have sought a scope ruling, and 19 U.S.C. § 1514(b) would require the importer to seek jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). This Court would have exclusive jurisdiction over such an action. The Court would require exhaustion of remedies where appropriate. See 28 U.S.C. § 2637. Here, however, the threshold question is first whether the court has jurisdiction under § 1581(a). Plaintiff claims that the scope of the Orders unambiguously exclude its merchandise and that Customs made a protestable mistake including the merchandise. Because the court has jurisdiction to hear the denial of the Plaintiff's protest, the failure to exhaust remedies provided in connection with 19 U.S.C. § 1673 is irrelevant.

## Conclusion and Order

The determination at issue here was Customs' liquidation of merchandise it found was subject to the scope of the Orders after its own laboratory analysis and investigation. The Orders specifically excluded "finished electrical conduit." Plaintiff's claim is that the scope of the Orders was clear and Customs made a mistake in assessing antidumping and countervailing duties on its merchandise. Thus, the decision at issue

here is a determination made by Customs under § 1514(a)(2) as to the rate and amount of duties assessed on Plaintiff's entry.  Accordingly, the court finds that it has jurisdiction pursuant to 28 U.S.C. § 1581(a).  Therefore it is hereby:

**ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction is denied.

Dated:  May 13, 2014
       New York, NY

                                                     /s/ Claire R. Kelly
                                                     Claire R. Kelly, Judge